# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KIMBERLY HILL,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| vs. | ) Case No. 2:13-cv-0552-CLS |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) ) ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Kimberly Hill, commenced this action on March 25, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ erred in evaluating claimant's subjective complaints of pain and her credibility. Upon review of the record, the court concludes that these contentions are without merit.

To demonstrate that pain renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ found that claimant suffered from multiple severe impairments, including status post posterior lumbar interbody fusion and posterior spinal fusion at L5-S1 with instrumentation; lumbar mechanical pain with intermittent right lower extremity neuropathy; and cervical disc degeneration with cervicalgia and intermittent right shoulder and right upper extremity radiculitis.[1]  He nonetheless determined that claimant retained the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: she must be afforded a sit/stand option; she is limited to occasional climbing, balancing, stooping, and crouching; she is precluded from crawling, kneeling, and climbing ladders/ropes/scaffolds; she must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibrations, fumes, odors, gases, dust, and poor ventilation; and she must avoid all exposure to hazardous machinery and unprotected heights.[2]

The ALJ also found that claimant's medically determinable impairments could reasonably be expected to cause the disabling symptoms claimant alleged, but he nonetheless concluded that claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the residual functional capacity finding.[3]  Specifically, the ALJ reasoned that "claimant's testimony at the hearing was not entirely credible to the extent that she alleged more severe symptoms and limitations than are supported by

---

[1] Tr. 12.
[2] Tr. 14.
[3] Tr. 16.

the objective medical and other evidence in the record, including her own written submissions."[4]

The court concludes that the ALJ adequately articulated reasons for rejecting claimant's credibility, and that his reasoning is supported by substantial evidence. First, and most importantly, the medical evidence — including the treatment notes of claimant's regular providers and the consultative report of Dr. Raveendran Meleth,[5] do not support a greater level of impairment than what was assessed by the ALJ. Although claimant continued to experience back pain on and after her alleged onset date,[6] there is no indication that her symptoms were any more severe than before her onset date, when she was working.

The ALJ also listed several reasons for finding claimant to be less than fully credible. First, he stated that claimant's self-described activities of daily living were not limited to the extent that should be expected from a person of her alleged limitations and symptoms.[7] The ALJ's summary of claimant's daily activities is accurate:

> Her reported activities included taking a shower, getting dressed, washing dishes, doing light housework, doing laundry, doing light chores outside (including a little lawn mowing), cooking dinner, and watching television. She provided that she took care of her boyfriend

---

[4] *Id.*
[5] Tr. 388-91.
[6] *See* Tr. 376, 425-26.
[7] Tr. 15.

and a small dog, who she fed, bathed, and took for walks. She provided that her condition affected her sleep. She provided that she generally did not have any problems with her personal care but that she could not bend over easily to dress and could not exercise like she used to. She provided that she prepared meals but could not stay on her feet for long. She provided that she went outside every day, could go out alone, and could drive. She provided that she shopped for clothes and groceries but again could not stay on her feet for long. She provided that she could no longer horseback ride but that she could do some very light boating and light gardening. She provided that she spent time with others going shopping, having lunch, talking on the telephone, and having friends over one to two times a week. She provided that she went regularly to clothing stores, grocery stores, and friends['] houses one to two times a week. She complained that she could no longer shop all day or go dancing with her boyfriend and generally could not stay on her feet for long. She provided that her conditions affected her ability to lift (only 5-10 pounds), squat, bend, stand, reach, walk, sit, kneel, and stair climb (as few as possible). She also alleged that her memory and concentration were affected. She provided that she could walk for only 15-30 minutes before needing to stop and rest. The Third Party Function Report submitted by the claimant's boyfriend was consistent with the claimant's own Function Report.[8]

Claimant argues that the ALJ improperly conflated her ability to perform these daily activities with an ability to perform substantial gainful work activity. Indeed, the Eleventh Circuit has disavowed the notion that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Lewis v. Callahan,* 125 F. 3d 1436, 1441 (11th Cir. 1997). That does not mean, however, that a claimant's ability to carry out daily activities should not be considered at all in the disability determination process. To the contrary, Social

---

[8] *Id.* (alteration supplied).

Security regulations expressly provide that such activities *should* be considered. *See* 20 C.F.R. § 404.1529(c)(3)(i) (listing "daily activities" first among the factors the Social Security Administration will consider in evaluating a claimant's pain). Here, the ALJ did not rely *solely* upon claimant's daily activities in determining her ability to work. Instead, he was careful to note that "the claimant's daily activities do not directly translate into the ability to work."[9] He simply (and properly) considered claimant's activities as one factor in evaluating the credibility of claimant's subjective complaints. Moreover, the ALJ's conclusions about claimant's credibility and daily activities were supported by substantial evidence.

Additionally, claimant testified during the administrative hearing that she ceased pain management therapy in 2008 because "I really felt there was — it wasn't helping because I'd have to take off work to go, and the time off, and it just didn't seem feasible."[10] However, a letter from claimant's pain management physician indicates that her care was terminated due to the detection of marijuana in her bloodstream during a routine drug screen.[11] Additionally, the most recent treatment notes prior to the termination of claimant's care indicated that claimant was "doing well with her medications" and was continuing to work.[12]

---

[9] *Id.*
[10] Tr. 40.
[11] Tr. 298.
[12] Tr. 299.

Claimant also testified during the administrative hearing that she stopped working in February of 2010 because she could no longer handle being on her feet and could not perform the tasks required of her.[13]  However, she informed her treating cardiologist on February 16, 2010 that she had put in her two weeks' notice at her job because she "wasn't happy," and she was looking for a new job.[14]  Claimant argues that she likely stated she was unhappy at her job because she was experiencing so much pain, but there is no evidence to support that speculative assertion.  Moreover, even if a contrary conclusion were possible from a review of the evidence, there was at least *substantial evidence*, in the form the cardiologist's records, to support the conclusion reached by the ALJ.

The ALJ also relied upon a Work Activities Questionnaire completed by claimant's supervisor during April of 2010 to support his finding that claimant's statements about her work limitations were not fully credible.  Claimant's supervisor indicated that claimant completed all the usual duties required for her position without special assistance, that she regularly reported for work as scheduled, and that she completed her work in the same amount of time as other employees in similar positions.  The supervisor rated claimant's productivity level as being 100% of other employees' productivity.[15]  Claimant attempts to downplay the importance of that

---

[13] Tr. 38.
[14] Tr. 339.
[15] Tr. 152-53.

Questionnaire by pointing out that claimant only worked at the job 32-36 hours each week, not a full 40-hour work week.  But claimant's argument misunderstands the purpose for which the Questionnaire was used.  The ALJ did not rely solely upon the Questionnaire to find that claimant was capable of performing substantial gainful activity on a sustained, forty-hour-per-week basis; instead, he compared the Questionnaire to claimant's hearing testimony in order to evaluate claimant's credibility.  The Questionnaire supports the ALJ's credibility finding.

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 10th day of January, 2014.

_____
United States District Judge